## 22209. CALLAWAY v. DOZIER.

DECIDED OCTOBER 29, 1932.

*Clement E. Sutton,* for plaintiff in error. *Earle Norman,* contra.

JENKINS, P. J. This was a proceeding by W. F. Dozier to foreclose a mortgage on a crop and certain personality. By affidavit of illegality the defendant, J. A. Callaway, alleged that the mortgage debt had been paid in full.

On the trial the plaintiff testified that the mortgage, which was dated March 13, 1929, was given to secure an account up to that date of approximately $119, "and for supplies for a run for the balance of the year 1929;" that the defendant owed him, at the time of the trial, "including the mortgage account as it appears on my ledger, and charge tickets, the sum of $143.11; that is the balance he is due me after giving him credit for all payments made me. . . Mr. Callaway traded during the year 1929, including balance of 1928, a little above $600. Mr. Callaway paid me in cash and ash timber on his account the amount of $112.66, and paid me in cotton $348.89, leaving a balance due of $143.11. I considered this mortgage stood for the whole account. At the time Mr. Callaway made these payments I gave him credit on his open account until this account had been paid, and the balance of the payments made were applied to his mortgage, and there is now due on the mortgage $143.11. Mr. Callaway did not tell me to credit the payments on the mortgage, and when the payments were made I credited him on his account and it was agreeable to him. I showed him on the books where I had credited the payments on his account, and he agreed to it. He never did say anything about crediting these payments on the mortgage, and the first I heard of this was about a year after the mortgage was past due. On these tickets, dated February 5, 1928, to March 13, 1929, there show credits aggregating $31.24, and on the tickets dated August 19, 1929, through November 25, 1929, there show credits aggregating $66.42. About the ash blocks that Mr. Callaway is claiming he is entitled to credit for, I gave him cash for all ash blocks he brought me, or credit

on his tickets, or merchandise. My tickets will show every payment he has made on his account. Credits have been given him. I owe him nothing for blocks." The witness further testified on cross-examination, with reference to the ash timber bought of the defendant, that "whatever was due on timber is credited on these charge tickets or I paid him in goods. I remember paying Mr. McAvoy $4 once for hauling ash timber for Mr. Callaway's account." The witness further testified: "This mortgage for $350 was taken from Mr. Callaway March 13, 1929. It included all items, whether shown on ledger or by these 'charge tickets,' and also balance of 1928 account up to March 13, 1929. He was due me a balance of seventy-odd dollars from 1928. On this batch of charge tickets dated February 5, 1929, through March 13, 1929, Mr. Callaway has paid me $31.24. As stated, these tickets included a seventy-odd dollars balance from 1928 and the other items furnished on the dates named. On the charge tickets running from August 19, 1929, through November 25, 1929, Mr. Callaway has paid me $66.42. This last batch of tickets amounted to $97.20. All the items shown on the charge tickets dated February 5, 1929, running through March 13, 1929, were included in the mortgage. My ledger shows that on June 12, 1929, he had traded $358.51, besides the tickets." The testimony of the defendant was contradictory of that of the plaintiff, in that the defendant testified that the plaintiff received three cars of ash timber, which would average $80 to $90 per car, for which he owed the defendant. There seems to be no dispute as to the credit on the account or mortgage for the cotton sold. The defendant further testified, however, with reference to the ash timber: "I traded out some of it. I never considered I owed him anything on account. He might owe me a little." The defendant further testified as to two other payments, one of $25 and one of $36, made on the account. He further testified, on cross-examination, as follows: "I do not know how much I traded out with Mr. Dozier. I have no idea what amount I traded. Looking at the account you have there and those tickets, I do not know whether they are correct or not. Mr. Dozier never did submit me an itemized statement of the account, and I never did know what I owed him."

Accepting, as they were authorized to do, the testimony of the plaintiff, including that given on cross-examination in explanation

of the defendant's account as shown by the plaintiff's ledger and by the "charge tickets," the jury were warranted in finding that the defendant owed the plaintiff $119 at the time the mortgage was executed; that he traded to the amount of $358.51, as shown by the ledger; and that he purchased goods to the amount of $97 subsequently to August 19, 1929, and subsequently to the date on which the ledger account appears to have been closed. These items total $574.51; and since the plaintiff testified that his ledger showed that "on June 12, 1929, he had traded $358.51 besides the tickets," the jury were authorized to say that this was the total amount of the indebtedness. While the plaintiff testified also that on the "batch of tickets dated February 5, 1929, through March 13, 1929," the defendant had paid $31.24, and that "on the charge tickets running from August 19, 1929, through November 25, 1929," the defendant had paid $66.42, there is nothing in the testimony of the plaintiff to indicate that such credits represented amounts paid in addition to the sum of $112.66 which the plaintiff testified had been paid in "cash and ash timber," and nothing in the testimony of the plaintiff to indicate that such sum did not also include the cash payments of $36 and $25 testified to by the defendant. Since the total of the payments testified to by the plaintiff, consisting of $112.66 paid "in cash and ash timber," and $348.89, the proceeds of cotton, was $461.55, leaving a balance due of $112.96, principal, and since the mortgage stipulated for interest at eight per cent. from date, and a portion of the account accrued the year previously, it can not be said that the verdict for the plaintiff in the amount of $132.35 was wholly unauthorized. There was no plea of usury.

While the record indicates that the defendant's landlord was interested in the crop, having waived his lien for rent in favor of the mortgage, which might have entitled the landlord to have all the proceeds of the crop credited on the mortgage, there is nothing in the record to indicate that the landlord was in any wise complaining about proceeds of the mortgaged crop having been applied on other debts; and since the plaintiff testified, and the jury were authorized to find, that the defendant consented to such application, the defendant can not complain.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*